

**U.S. Department of Justice**

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (413) 785-0330*

*United States Courthouse*
*300 State Street, Suite 230*
*Springfield, Massachusetts 01105*

July 30, 2025

Marissa Elkins, Esq.
Sharp, Heyman, Dolven & Elkins, LLP
100 Main Street, Suite 2
Northampton, MA 01060

    Re:    *United States v. Gabriel Lebon*
            Criminal No. 25-CR-300____-MGM

Dear Counsel:

    The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Gabriel Lebon ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1. <u>Change of Plea</u>

    No later than August 29, 2025 or as soon as practicable for the Court, Defendant will waive Indictment and plead guilty to Counts One and Two of the Information:

        a)    Count One: Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1); and

        b)    Count Two: Possession with Intent to Distribute Cocaine Base and Heroin, in violation of 21 U.S.C. § 841(a)(1).

    Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

    No later than August 29, 2025 or as soon as practicable for the Court, Defendant will also admit to the violation of supervised release in *United States v. Gabriel Lebron*, 25-CR-30018-

1

Initialed by Gabriel Lebron: *[signature]*

MGM: Violation of Mandatory Condition No. 1, which states the Defendant must not commit another federal, state, or local crime.

Defendant agrees to the accuracy of the attached Statement of Facts.

The U.S. Attorney agrees not to charge Defendant with any other violations concerning the conduct set forth in the attached Statement of Facts.

2. Penalties

Defendant faces the following mandatory minimum and maximum penalties:

 a) Count One (18 U.S.C. §§ 922(g)(1) and 924(a)(8)): incarceration for a period of 15 years; supervised release for a period of three years; a fine of $250,000; a mandatory special assessment of $100; and forfeiture to the extent charged in the Information.

 b) Count Two (21 U.S.C. § 841(a)(1)): incarceration for a period of 20 years; supervised release for a minimum period of three years and a maximum period of five years; a fine of $1,000,000; a mandatory special assessment of $100; and forfeiture to the extent charged in the Information.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3. Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 21:

Count One

 a) Defendant's base offense level is 20, because Defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence (USSG §2K2.1(a)(4)(A)).

 b) Defendant's offense level is increased by 4, because Defendant used or possessed any firearm or ammunition in connection with another felony offense (USSG §2K21.(b)(6)(B)).

2

Initialed by Gabriel Lebron: _____

Count Two

a) Defendant's base offense level is 6, because Defendant's offense involved less than one kilogram of converted drug weight (USSG §§2D1.1(a)(5) and (c)(17)).

b) Defendant's offense level is increased by 2, because Defendant possessed a firearm in connection with the offense (USSG §2K21.(b)(6)(B)).

Adjusted Offense Level

c) Count One and Count Two form one group because each count embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the other count (USSG §3D1.2(c)).

d) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

The parties agree that Defendant's advisory sentencing Guidelines range for the violation of supervised release in *United States v. Gabriel Lebron*, 25-CR-30018-MGM is 18 to 24 months.

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

3

Initialed by Gabriel Lebron: _/s/_

4. Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence to the Court:

   a) incarceration of 88 months, consisting of 70 months for Count One and Count Two plus 18 months for the violation of supervised release;

   b) a fine within the Guidelines sentencing range as calculated by the parties OR U.S. Attorney in Paragraph 3, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

   c) 36 months of supervised release;

   d) a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court by the date of sentencing;

   e) forfeiture as set forth in Paragraph 6.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5. Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. *Specifically, Defendant agrees that:*

   a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

   b) Defendant will not challenge any prison sentence of 88 months or less or any court orders relating to forfeiture, restitution, fines or supervised release. This provision is binding even if the Court's Guidelines analysis is different than the one in this Agreement.

4

Initialed by Gabriel Lebron: _____

The U.S. Attorney agrees that, regardless of how the Court calculates Defendant's sentence, the U.S. Attorney will not appeal any sentence of imprisonment of 88 months or more.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above) will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above), regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6.    Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

  a. One Jimenez Arms, Model JA 25, .25 caliber semi-automatic pistol, Serial No. 1855391; and

  b. Five rounds of .25 caliber ammunition.

Defendant admits that these assets are subject to forfeiture on the grounds that they were involved in Defendant's offense. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or

5

Initialed by Gabriel Lebron: _____

any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7. Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8. Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant

6

Initialed by Gabriel Lebron: _____

any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9.  Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\* \* \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Steven H. Breslow.

Sincerely,

LEAH B. FOLEY
United States Attorney

By: _____
NEIL DESROCHES
Chief, Springfield Branch Office

_____
STEVEN BRESLOW
Digitally signed by STEVEN BRESLOW
Date: 2025.07.30 16:36:11 -04'00'

STEVEN H. BRESLOW
Assistant U.S. Attorney

7

Initialed by Gabriel Lebron: _____

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the mandatory minimum and maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Gabriel Lebron
Defendant

Date: 8/22/25

I certify that Gabriel Lebron has read this Agreement and that we have discussed what it means. I believe Gabriel Lebron understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Marissa Elkins
Attorney for Defendant

Date: 8/22/25

8

Initialed by Gabriel Lebron: ____

*United States v. Gabriel Lebon*
Criminal No. 25-CR-300____-MGM
**Statement of Facts**
**August 22, 2025**

1. Introduction

As set forth below, on April 9, 2025, in Hadley, Massachusetts, the defendant Gabriel Lebron ("Lebron" or "the defendant") possessed a .25 caliber semi-automatic pistol loaded with five .25 caliber rounds of ammunition, ten "snap caps" of crack cocaine, and two "bundles" of heroin.

The following facts are based upon Hadley Police Department ("HPD") Arrest Report No. 25-28-AR, an audio recording of a related 911 call and HPD video footage from officers' body worn cameras, their vehicles, and the HPD booking station.

2. Lebron's Violation of Supervised Release

On May 4, 2023, Lebron pleaded guilty in the District of Vermont to an Indictment charging one count of 18 U.S.C. § 922(g)(1). According to Lebron's Plea Agreement, on October 12, 2022, Bennington Police Department officers seized from Lebron's waistband a loaded, privately manufactured firearm (or "ghost gun") with a laser sight, with one round of ammunition in the chamber and a 15-round magazine loaded with 11 rounds. On September 11, 2023, Lebron was sentenced to 27 months of imprisonment and three years of supervised release. On November 4, 2024, Lebron commenced his supervised release term. Thus, Lebron's unlawful possession of the firearm, ammunition, crack cocaine, and heroin in the instant case constituted a violation of his supervised release in *United States v. Gabriel Lebron*, 25-CR-30018-MGM.

3. The 911 Call

On April 9, 2025, at approximately 3:03 p.m., a woman placed a 911 call to the HPD and stated:

   a. She was a guest at the Howard Johnson hotel.

   b. A man downstairs in the lobby "was just brandishing a gun on FaceTime, and he's here. He has it in his pocket."

   c. The man was Hispanic and light-skinned; about 5 feet, 5 inches tall; approximately 180 or 200 pounds, and wearing a light green sweatshirt with a satchel or sack over his shoulder.

   d. The gun was a pistol.

   e. The man displayed the gun on FaceTime and stated "I'll come to your house with this."

1

Initialed by Gabriel Lebron: _____

  f. All of the preceding "just happened."

4. <u>The Identification of Lebron.</u>

At approximately 3:06 p.m., Officer Jacob Laughlin arrived at the Howard Johnson and immediately entered without backup due to his concern for the safety of everyone in the hotel. Officer Laughlin spoke briefly with the receptionist, who stated she was unaware of a man with a firearm.

Officer Laughlin walked deeper into the lobby with his firearm drawn and saw Lebron seated at a table, talking on his cell phone. No one else was in the lobby. Lebron matched the description provided by the 911 caller (including the green sweatshirt), so Officer Laughlin pointed his firearm at Lebron and ordered him to put his hands up, turn away from Officer Laughlin, and stand up slowly. Lebron complied.

5. <u>The Recovery of the Loaded Firearm, the Crack Cocaine, and the Heroin</u>

Officer William Delgado then arrived at the lobby and took Lebron to the ground without incident. Sergeant Thomas Douglas also arrived and asked Lebron if he had a firearm, and Lebron replied that he did have one in his pants pocket. Officer Laughlin demanded his license to carry, and Lebron replied that he did not have one. Officer Laughlin then recovered a gun from Lebron's pocket and made it safe.

Officer Delgado, still holding Lebron on the ground, handcuffed Lebron and recited his *Miranda* rights aloud. Officer Delgado pulled out Lebron's ID card, and they both recognized each other from Lebron's past criminal offenses. Officer Delgado told Lebron that he could not have a firearm on him "especially with [his] criminal history," to which Lebron replied, "I know."

Sergeant Douglas and Officer Delgado then helped Lebron to his feet and began checking his clothes. Officer Delgado asked Lebron if he had been staying out of trouble, and Lebron mumbled "Well, yeah just — you know I gotta keep protecting" and said something unintelligible. Officer Delgado then asked Lebron why he had a gun on him, and Lebron shrugged. Sergeant Douglas felt a visibly pronounced lump protruding from below Lebron's sweatpants on his right thigh and asked Lebron what he had in his pocket. Lebron replied, "A bag." Sergeant Douglas then pulled down Lebron's sweatpants to reveal a pair of shorts, and removed from the shorts' right front pocket a clear plastic bag that contained what appeared to be ten "snap caps" of crack cocaine and two bundles of heroin.

In the lobby, Officer Laughlin placed Lebron's belongings, including the firearm and drugs, into evidence bags.

6. <u>Lebron's Other Statements</u>.

As Sergeant Douglas headed to the reception desk, Officer Delgado asked Lebron if he was staying at the Howard Johnson. Lebron replied, "No. I just came to see my aunt. I was waiting for

2

Initialed by Gabriel Lebron: _____

the bus. I live in Northampton . . . I was waiting for the bus to go to Holyoke…I was just seeing my aunt. She stays here . . . . My boy lives up the street. We smoked."

Officer Delgado began leading Lebron out of the hotel, where they passed Sergeant Douglas. Sergeant Douglas told Officer Delgado, "He's got a girl here, I think." Officer Delgado then asked Lebron about his relationship to this woman, and Lebron stated that she was his aunt. Sergeant Douglas asked which room she is staying in, and Lebron answered that he did not know which room. Lebron then said, "I knew she was here. I didn't ask her what room. I just came here — I came on the bus. My friend lives up the street. I smoked with him. I stopped and said 'hi' to her. I was waiting for the bus to go back to Northampton."

Outside the hotel a short while later, Sergeant Douglas asked Lebron what his aunt's name was, and Lebron replied that he just called her "Gordi" and that he did not know her real name because she was not his real aunt, but actually his aunt's friend. Officer Delgado then asked Lebron to provide a physical description of "Gordi." Lebron told him that she was a "chunky lady," "Puerto Rican," and "dirty blond." Lebron told the officers that she was going to come back down from her room.

As Officer Delgado drove Lebron to the police station, Lebron stated that:
    a.    He was living in Northampton with his father;
    b.    "They were trying to send [him] back to Vermont 'cause [he] didn't have an address."
    c.    He is currently on a three-year probation.

When Lebron first arrived in the HPD booking room, Officer Briana Rossi repeated Lebron's *Miranda* Rights to him and informed him that everything in that room would be recorded. Lebron confirmed that he is Hispanic, 5'5", and 180 pounds (matching the information provided by the 911 caller). Officer Rossi also asked Lebron if he had any "gang affiliation." Lebron initially replied "no" but then said "Dirty South's a gang, so, it's up to you, however you take it."

7.    <u>The Firearm and Ammunition</u>

The firearm is a Jimenez Arms, Model JA 25, .25 caliber semi-automatic pistol, Serial No. 185539. It contained five rounds of .25 caliber ammunition, including one in the chamber.

According to ATF Special Agent Brian Meehan, Jimenez Arms never made any firearms in Massachusetts, and no ammunition is made in Massachusetts.

8.    <u>The Narcotics</u>

According to a Massachusetts State Police ("MSP") Certificate of Drug Analysis dated August 7, 2025, MSP Forensic Scientist II Susan E. Roberts tested tan powder in one of the six white glassine bags stamped "Fuck You" in one bundle and found that it contained Fentanyl, heroin, and MDMA, along with other substances. She also tested pale yellow powder in one of the ten white glassine bags stamped "Gricelda Blanco" in the other bundle and found that it

3

Initialed by Gabriel Lebron: _____

contained Fentanyl and heroin, along with other substances. Lastly, she tested white rock-lick powder in one of the 40 multi-colored plastic vials and found that it contained cocaine.

---

4

Initialed by Gabriel Lebron: _____